## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| KNIGHT WALL SYSTEMS, INC., <br><br>             Plaintiff, <br><br> v. <br><br> PRECISION WALL SYSTEMS, INC., <br><br>             Defendant. | CASE NO. <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY DEMAND** |

Plaintiff Knight Wall Systems, Inc. ("Plaintiff" or "KWS"), by and through its undersigned counsel, brings this Complaint against Defendant Precision Wall Systems, Inc., DBA Gridworx ("Defendant" or "Gridworx") and alleges as follows:

### NATURE OF THE ACTION

1. This action arises under the Patent Act, 35 U.S.C. §§ 1 *et seq*.

2. Plaintiff KWS designs, manufactures, and sells thermally isolated rainscreen solutions.

3. KWS is the exclusive owner of United States Patent No. 9,732,518 (the "'518 Patent") entitled "System and Methods for Thermal Isolation of Components Used". (Ex. 1.)

4. Defendant Gridworx manufactures, sells, uses and offers for sale at least four cladding systems and methods having thermal isolation of components used, specifically, but not limited to, the SKR (Saw Kerf Rotational), UKR (Undercut Kerf Rotational), ULF (Undercut Large Floating), and UXF (Undercut XLarge Floating) systems (collectively, the "Accused Products"), which actions infringe KWS' '518 Patent.

5. Gridworx is actively advertising and offering for sale the Accused Products and instructing consumers on the use of this product.

### PARTIES

6. Plaintiff Knight Wall Systems, Inc. is a corporation organized and existing under

the laws of the State of Washington, with its principal place of business at 2401 E 6th Street, Deer Park, Washington 99006.

7.    Upon information and belief, Defendant Precision Wall Systems, Inc. DBA Gridworx is a corporation organized and existing under the laws of the State of Texas, with its principal place of business and registered agent located at 10980 Alder Circle, Dallas, Texas 75238.

8.    Upon information and belief, Gridworx designs, manufactures, markets, uses, and offers for sale the Accused Products, which are cladding attachment systems and rainscreen solutions, infringing the '518 Patent (the "Infringing Activities"). Gridworx conducts substantial business within Colorado and the United States through its interactive commercial website, hosted at <gridworxwalls.com>, through which it solicits sales, provides product information and technical specifications, and offers products for sale to customers throughout the United States, including specifically to customers in Colorado and the Denver metropolitan area for use in construction of buildings located in Colorado and the Denver metropolitan area.

## SUBJECT MATTER JURISDICTION

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a). This action arises under the Patent Act, 35 U.S.C. §§ 1 *et seq*., and presents federal questions arising under the patent laws of the United States.

## PERSONAL JURISDICTION

10.    This Court has specific personal jurisdiction over Gridworx because Gridworx has purposefully directed its activities at residents of Colorado and this judicial district, and KWS' claims arise directly from those forum-directed activities.

11.    Gridworx has purposefully availed itself of the privileges of conducting business in Colorado and has established minimum contacts with this forum sufficient to support the exercise of personal jurisdiction. Gridworx's contacts with Colorado include:

a. **Direct Sales and Offers for Sale in Colorado**: Gridworx offers for sale, sells, and ships products, including the Accused Products, directly to customers, contractors, distributors, and end users located in Colorado and within this judicial district, including in the Denver metropolitan area;

b. **Interactive Commercial Website Targeting Colorado**: Gridworx operates and maintains the website <gridworxwalls.com>, an interactive commercial website accessible to Colorado residents that actively solicits business from Colorado customers. Through this website, Gridworx:

- Displays detailed product information, specifications, and technical data for its products, including the Accused Products;

- Provides the ability to request quotes;

- Allows Colorado residents and businesses to contact Gridworx's sales representatives;

- Facilitates orders and the purchasing of products including the Accused Products to customers located in Colorado for use in buildings in the State of Colorado;

- Advertises its products and services to Colorado customers;

- Provides downloadable installation guides and technical support materials; and

- Specifically targets the Denver, Colorado metropolitan market by offering products and services specifically in Denver and the metropolitan area through dedicated Denver-focused webpages;

c. **Denver-Specific Sales Offerings**: Gridworx has created and maintains a dedicated webpage specifically targeting Denver, Colorado customers and offering products for sale in Denver. This webpage, located at <https://gridworxwalls.com/interior-

exterior-stone-wall-panels-for-us-canada-and-internationally/interior-exterior-stone-wall-panels-offered-in-denver/>, is titled "Interior & Exterior Stone Wall Panels Offered in Denver" and demonstrates Gridworx's deliberate and purposeful targeting of the Denver market and this judicial district for sales of its products. (Ex. 2.) Gridworx's creation and maintenance of Denver-specific sales pages demonstrate its intent to conduct business with Colorado customers and its purposeful availment of the Colorado market;

d. **Colorado Project Portfolio and Advertising**: On its website, Gridworx features photographs, descriptions, and case studies of completed construction projects in Colorado in which the Accused Products were used, to promote the Accused Products and to advertise Gridworx's services to prospective Colorado customers. Gridworx's website includes dedicated project pages for Colorado projects, including:

- The Denver Art Museum Offices project in Denver, Colorado, featured at <https://gridworxwalls.com/project/denver-art-museum-offices/> (Ex. 3); and

- The Larimer 1800 project in Denver, Colorado, featured at <https://gridworxwalls.com/project/larimer-1800/> (Ex. 4).

By prominently featuring completed Colorado projects in its project portfolio, Gridworx advertises its Colorado presence and experience to solicit additional business from prospective Colorado customers and demonstrates its established commercial activity in this forum;

e. **Colorado Installation Activities**: Upon information and belief, Gridworx has installed, or caused to be installed, its products including the Accused Products on construction projects within this judicial district, including the Denver Art Museum

Offices and Larimer 1800 projects in Denver. (Exs. 3–4.) These installation activities constitute direct business operations by Gridworx in Colorado;

f. **Continuous and Systematic Business Activity**: Gridworx regularly, continuously, and systematically offers for sale, sells, ships, and distributes products, including the Accused Products, in Colorado through its website and other channels, demonstrating an established pattern of commercial activity directed at this forum;

g. **Marketing and Promotional Activities**: Gridworx directs marketing, advertising, and promotional materials toward Colorado residents and businesses through its website, including through Denver-specific webpages and Colorado project showcases, and through online channels;

h. **Ongoing Customer Relationships**: Upon information and belief, Gridworx maintains ongoing business relationships with customers, contractors, and developers in Colorado, including providing technical support, installation guidance, warranty services, and responding to inquiries from Colorado-based customers; and

i. **Revenue Derived from Colorado**: Upon information and belief, Gridworx derives substantial revenue from goods sold and services provided to customers in Colorado, including sales for the Denver Art Museum Offices project, the Larimer 1800 project, and other Colorado projects and customers.

12. KWS' patent infringement claims arise directly out of and relate to Gridworx's Colorado-directed activities and contacts with this forum. The acts of patent infringement occur in Colorado where Gridworx offers for sale, sells, ships, uses and installs or causes to be installed, the Accused Products to and for Colorado customers. Gridworx's sales, offers for sale, marketing, distribution, and installation activities in Colorado—including its deliberate creation of Denver-specific sales webpages and its completion of construction projects in Denver—directly give rise

to and form the basis for KWS' infringement claims. Under Federal Circuit law, patent infringement by offer for sale, use and sale occur where infringing products are offered and where sales are consummated. Gridworx's purposeful commercial activities in Colorado—specifically its offers to sell, sales, use and installations of the Accused Products in Colorado—are the very conduct alleged to constitute patent infringement in this action.

13. The exercise of personal jurisdiction over Gridworx is reasonable, fair, and consistent with due process and traditional notions of fair play and substantial justice because:

  a. Gridworx has purposefully directed substantial, ongoing commercial activity toward Colorado, has voluntarily chosen to conduct business in this forum, has created Denver-specific sales webpages, has completed multiple construction projects in Denver, and has actively solicited Colorado customers;

  b. The State of Colorado has a strong interest in adjudicating disputes arising from commercial activities conducted within its borders and in protecting Colorado customers and businesses from tortious conduct, including patent infringement, that affects Colorado commerce;

  c. KWS has a substantial interest in obtaining effective relief against Gridworx's Infringing Activities that are directed at and occurring within Colorado;

  d. Gridworx will not be unduly burdened by litigating in Colorado because it has voluntarily and purposefully conducted substantial business in this forum, has specifically targeted Denver and Colorado customers for sales, has completed construction projects in Denver, has derived revenue from Colorado customers, and litigating in Colorado is a foreseeable consequence of Gridworx's deliberate decision to target the Colorado market; and

  e. The interstate judicial system's interest in the efficient resolution of disputes is well served by litigation in this forum, where Gridworx has directed its Infringing

Activities, where relevant evidence of Gridworx's sales, marketing, installation, and distribution activities is located, and where Gridworx's Colorado customers and projects are located.

Accordingly, this Court's exercise of personal jurisdiction over Gridworx comports with the requirements of due process under the Fifth Amendment to the United States Constitution.

## **VENUE**

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because Gridworx has committed and continues to commit acts of patent infringement within this judicial district.

15.     Gridworx's acts of infringement in this judicial district include:

a.     Offering for sale the Accused Products to customers located in Colorado and within this judicial district through its website <gridworxwalls.com> and other sales channels, in violation of 35 U.S.C. § 271(a);

b.     Specifically, and deliberately targeting the Denver, Colorado market within this judicial district by:

- Creating and maintaining a dedicated webpage offering products for sale specifically in Denver, Colorado, titled "Interior & Exterior Stone Wall Panels Offered in Denver" located at <https://gridworxwalls.com/interior-exterior-stone-wall-panels-for-us-canada-and-internationally/interior-exterior-stone-wall-panels-offered-in-denver/> (Ex. 2); and

- Featuring completed Denver, Colorado construction projects on its website, including the Denver Art Museum Offices project located at <https://gridworxwalls.com/project/denver-art-museum-offices/> (Ex. 3) and the Larimer 1800 project located at <https://gridworxwalls.com/project/larimer-1800/> (Ex. 4), to advertise

Gridworx's Colorado work and solicit additional Colorado customers;

c.   Selling and shipping the Accused Products to customers in Colorado and this judicial district, in violation of 35 U.S.C. § 271(a);

d.   Installing or causing to be installed products, including upon information and belief, the Accused Products, on construction projects within this district, including the Denver Art Museum Offices project and the Larimer 1800 project in Denver, Colorado (Exs. 3–4);

e.   Providing technical specifications, product literature, installation instructions, and customer support for the Accused Products to Colorado customers, contractors, and end users through its website and other channels to facilitate the sale, installation, and use of the Accused Products in Colorado;

f.   Inducing and actively inducing contractors, distributors, installers, and end users in Colorado to install, use, and sell the Accused Products in a manner that directly infringes one or more claims of the '518 Patent, in violation of 35 U.S.C. § 271(b); and

g.   Maintaining ongoing commercial relationships with Colorado customers, contractors, and developers involving the sale, distribution, installation, and support of the Accused Products.

16.   These acts of offering for sale, selling, installing, and inducing infringement of the Accused Products in Colorado and Denver constitute acts of patent infringement committed in this judicial district within the meaning of 28 U.S.C. § 1400(b), thereby rendering venue proper in this Court.

**FACTUAL BACKGROUND**

**A.  Knight Wall Systems and the '518 Patent.**

17.   KWS is a leading designer and manufacturer of innovative rainscreen solutions for

commercial and residential buildings. KWS' products improve building energy efficiency by reducing thermal bridging and enhance moisture management by creating drainage planes behind exterior cladding.

18.     On August 15, 2017, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 9,732,518, entitled "System and Methods for Thermal Isolation of Components Used". (Ex. 1.) The '518 Patent names Scott Croasdale and Douglas James Knight as inventors.

19.     KWS is the exclusive owner by assignment of all rights, title, and interest in the '518 Patent, including the right to sue for and recover damages for past, present, and future infringement.

20.     The '518 Patent is valid and enforceable. The '518 Patent remains in full force and effect.

21.     The '518 Patent discloses and claims systems and methods for reducing thermal bridging in wall assemblies by thermally isolating metal components. Specifically, the '518 Patent addresses the problem of heat loss through metal fasteners and brackets in wall systems by using insulating plates (made from materials such as ceramics or polymers) that are placed between metal components to prevent direct metal-to-metal contact.

22.     The claimed invention includes an isolator plate adapted to be placed between a wall stud and a fastening member, where the isolator plate consists of thermal insulating material with lower thermal conductivity than the metal components, is sized to be approximately coextensive with the fastening member, includes openings for receiving fasteners, and includes positioning structures (such as tabs or hooks) that attach the isolator plate to the fastening member for easier installation.

23.     The '518 Patent system improves the overall thermal resistance (R-value) of walls by minimizing heat transfer through conductive metal elements and are particularly useful in wall

constructions using metal framing with insulation such as rigid foam boards or mineral wool.

**B. Gridworx and the Accused Products.**

24.     Gridworx designs, manufactures, markets, offers for sale, sells, uses and distributes cladding attachment systems and rainscreen solutions for commercial and residential construction.

25.     Gridworx and KWS are competitors within the same industry and since at least 2025 have been in competition to win the same bid for a project.

26.     Gridworx manufactures and sells at least four cladding systems that infringe the '518 Patent: the SKR System, the UKR System, the ULF System, and the UXF System (collectively, the "Accused Products").

27.     The Accused Products are cladding attachment and support systems that include thermal isolation components designed to reduce thermal bridging between metal fastening components and building structures, in the same manner as the systems claimed in the '518 Patent.

28.     Gridworx is not licensed under the '518 Patent, either expressly or implicitly, nor do they enjoy or benefit from any rights in or to the '518 Patent whatsoever.

**C. Gridworx's Business Activities in Colorado and Denver.**

29.     Gridworx actively conducts business in Colorado and solicits customers in this judicial district, including specifically in the Denver metropolitan area. Gridworx markets, advertises, offers for sale, uses and sells, installs and causes to be installed, the Accused Products and other products to Colorado customers through its website and other commercial channels.

30.     Gridworx operates an interactive commercial website at <gridworxwalls.com> through which it offers products, including the Accused Products, for sale to customers nationwide and in Colorado. The website provides detailed product specifications, technical information, installation guides, project case studies, and the ability to request quotes and contact Gridworx's sales representatives. The website is specifically designed to facilitate commercial

transactions and to solicit orders from customers, including Colorado customers.

31.    Gridworx has specifically and deliberately targeted the Denver, Colorado market for sales of its products. Gridworx has created and maintains a dedicated webpage titled "Interior & Exterior Stone Wall Panels Offered in Denver" located at <https://gridworxwalls.com/interior-exterior-stone-wall-panels-for-us-canada-and-internationally/interior-exterior-stone-wall-panels-offered-in-denver/>. (Ex. 2.) This webpage specifically offers Gridworx's products for sale in Denver, Colorado, and is designed to solicit business from Denver-area customers.

32.    The Denver-specific webpage offers Gridworx's cladding systems and related products, including the Accused Products, for sale to Denver customers. The existence of this Denver-focused webpage demonstrates Gridworx's purposeful targeting of the Denver market and its intent to conduct sales and business in this judicial district.

33.    Gridworx prominently features completed Colorado construction projects on its website in a dedicated project portfolio section. Gridworx's website includes case studies and photographs of at least two Denver, Colorado projects:

    a.    The Denver Art Museum Offices project in Denver, Colorado, featured at <https://gridworxwalls.com/project/denver-art-museum-offices/> (Ex. 3); and

    b.    The Larimer 1800 project in Denver, Colorado, featured at <https://gridworxwalls.com/project/larimer-1800/> (Ex. 4).

34.    By featuring these Denver projects in its online project portfolio, Gridworx advertises to prospective customers—including Colorado customers—that Gridworx has experience installing its products in Colorado, has established relationships with Colorado contractors and developers, and is actively conducting business in the Colorado market. These project pages are designed to generate additional business by showcasing Gridworx's completed work to potential customers.

35.    Upon information and belief, Gridworx offered to sell, sold, and shipped its

products, including the Accused Products, to the Denver Art Museum Offices project and the Larimer 1800 project for installation on those projects within this judicial district. (Exs. 3–4.)

36.    Upon information and belief, Gridworx was involved in the installation, supervision, technical support, or quality control for its products installed on the Denver Art Museum Offices project and/or the Larimer 1800 project within this judicial district. (Exs. 3–4.)

37.    Gridworx's website allows visitors, including Colorado residents and businesses, to view detailed technical drawings, installation instructions, product specifications, and engineering data for the Accused Products and Gridworx's other products. The website provides mechanisms for Colorado customers to request quotes, contact sales representatives, and initiate purchases of the Accused Products.

38.    Upon information and belief, Gridworx has offered to sell, sold, and shipped the Accused Products to customers, contractors, and distributors located in Colorado and within this judicial district beyond the Denver Art Museum Offices and Larimer 1800 projects. (Exs. 3–4.) Upon information and belief, Gridworx has generated substantial revenue from sales of the Accused Products to Colorado customers.

39.    Upon information and belief, Gridworx provides ongoing technical support, customer service, installation guidance, and warranty services to Colorado customers who purchase the Accused Products. Gridworx maintains commercial relationships with Colorado-based contractors, distributors, developers, and building professionals to facilitate the sale and use of the Accused Products in Colorado.

40.    Gridworx actively markets the Accused Products as alternatives to competing rainscreen and cladding attachment systems, including systems offered by KWS. Gridworx promotes the Accused Products' features, performance characteristics, and purported advantages through its website, product literature, and communications with customers, including customers in Colorado.

**D.  Pre-Suit Notice and Negotiations.**

41.    Plaintiff has complied with the notice requirements of 35 U.S.C. § 287 at least as early as July 29, 2025. (Exs. 5–6.)

42.    On July 29, 2025, KWS contacted Gridworx in writing regarding its Infringing Activities and the '518 Patent. (Ex. 5.) This correspondence placed Gridworx on actual notice of the '518 Patent and informed Gridworx that the Accused Products infringe one or more claims of the '518 Patent.

43.    On September 5, 2025, Gridworx responded to KWS claiming non-infringement. (Ex. 7.) Despite receiving actual notice of the '518 Patent and KWS' infringement allegations, Gridworx continued to make, use, offer for sale, sell, and import the Accused Products without authorization.

44.    On October 20, 2025, KWS again contacted Gridworx in writing regarding its Infringing Activities and provided additional information concerning the '518 Patent and the Accused Products' infringement. (Ex. 7.)

45.    On November 5, 2025, Gridworx responded to KWS asking for a licensing proposal. (Ex. 7.) Gridworx's request for a proposal demonstrates Gridworx's acknowledgment of KWS' patent rights and Gridworx's awareness that its activities implicated the '518 Patent.

46.    On November 7, 2025, KWS responded to Gridworx with a licensing proposal and response deadline. (Ex. 7.) Gridworx failed to accept KWS' proposal or cease its Infringing Activities by the deadline.

47.    On November 13, 2024, Gridworx responded to KWS rejecting KWS' licensing proposal and again asserting that Gridworx does not infringe any claim of the '518 Patent. (Ex. 7.) In this response, Gridworx stated that "the information available to Gridworx indicates that Gridworx is not practicing any claim of any Knight Wall Systems patent" and that Gridworx's "investigation and that of [its] outside counsel does not identify any Gridworx product that these

13

rights would relate to." Despite this assertion, Gridworx has continued to make, use, offer for sale, sell, and import the Accused Products without obtaining a formal non-infringement opinion, ceasing its Infringing Activities, or making any substantive modifications to the Accused Products.

48.    Despite having actual knowledge of the '518 Patent since at least July 29, 2025, and despite multiple opportunities to resolve this dispute through licensing negotiations, Gridworx has continued and continues to willfully infringe the '518 Patent by making, using, offering for sale, selling, and importing the Accused Products.

## WILLFUL INFRINGEMENT

49.    Gridworx's infringement of the '518 Patent has been willful.

50.    Gridworx has had actual knowledge of the '518 Patent since at least July 29, 2025, when KWS provided Gridworx with detailed notice of the patent and explained how the Accused Products infringe.

51.    Despite having actual knowledge of the '518 Patent, Gridworx has continued to make, use, sell, and offer for sale the Accused Products without authorization from KWS.

52.    Gridworx engaged outside patent counsel to evaluate the '518 Patent and participated in licensing negotiations with KWS, demonstrating Gridworx's awareness of the patent and understanding of the infringement issues.

53.    Despite this knowledge and opportunity to cease its Infringing Activities or obtain a license, Gridworx rejected KWS' licensing proposal and has continued its infringing conduct.

54.    Gridworx's post-notice infringement demonstrates willful disregard of KWS' patent rights, entitling KWS to enhanced damages under 35 U.S.C. § 284.

## COUNT I

### Patent Infringement Under 35 U.S.C. § 271(a)

55.    Plaintiff realleges and incorporates by reference its allegations in the preceding

paragraphs as though fully set forth herein.

56.    Gridworx has directly infringed and continues to directly infringe one or more claims of the '518 Patent, including at least Claim 1, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

57.    Gridworx has directly infringed and continues to directly infringe the '518 Patent by making, using, offering for sale, selling, and/or importing into the United States the Accused Products without authority from KWS.

58.    Specifically, Gridworx has:

a.    Made the Accused Products, which embody the claimed inventions of the '518 Patent;

b.    Used the Accused Products in testing, demonstrations, and marketing activities in a manner that directly infringes the '518 Patent;

c.    Offered the Accused Products for sale to customers nationwide, including specifically to customers in Colorado through Gridworx's Denver-specific sales webpage and website; and

d.    Sold the Accused Products to customers, contractors, and distributors, including customers in Colorado.

59.    Each of the Accused Products incorporates thermal isolation systems that include isolator plates adapted to be placed between metal wall studs and metal fastening members, where the isolator plates consist of thermal insulating material, are sized to be approximately coextensive with the fastening members, include openings for receiving fasteners, and include positioning structures that attach the isolator plates to the fastening members.

60.    The Accused Products satisfy each and every element of one or more claims of the '518 Patent, literally and/or under the doctrine of equivalents.

61.    Gridworx has directly infringed the '518 Patent with actual knowledge of the patent

since at least July 29, 2025, when KWS provided Gridworx with written notice of the '518 Patent and informed Gridworx that the Accused Products infringe the '518 Patent.

62.     Despite this actual knowledge, Gridworx has continued to make, use, offer for sale, sell, and import the Accused Products without authorization from KWS.

63.     KWS has been and continues to be damaged by Gridworx's direct infringement of the '518 Patent. Gridworx's infringement has caused and continues to cause KWS to suffer lost sales, lost profits, lost market share, price erosion, and damage to its business relationships and goodwill.

64.     Unless enjoined by this Court, Gridworx will continue to directly infringe the '518 Patent, causing KWS irreparable harm for which there is no adequate remedy at law.

## COUNT II

### Patent Infringement Under 35 U.S.C. § 271(b)

65.     Plaintiff realleges and incorporates by reference its allegations in the preceding paragraphs as though fully set forth herein.

66.     Gridworx has induced and continues to induce infringement of one or more claims of the '518 Patent in violation of 35 U.S.C. § 271(b).

67.     Gridworx has actively and knowingly induced contractors, installers, distributors, building owners, developers, and end users to directly infringe the '518 Patent by installing, facilitating or directing the installation and use of, using, and selling the Accused Products in a manner that practices the claimed inventions of the '518 Patent.

68.     Gridworx's acts of inducement include, but are not limited to:

   a.   Providing detailed installation instructions, technical specifications, installation guides, and step-by-step directions that instruct customers how to install and use the Accused Products in an infringing manner;

   b.   Providing technical drawings, CAD files, and engineering specifications that show

customers how to incorporate the Accused Products into wall assemblies in a manner that infringes the '518 Patent;

c.  Offering installation support, technical assistance, and customer service to customers installing the Accused Products, including specifically to customers and contractors in Colorado;

d.  Training contractors, installers, and distributors on how to properly install and use the Accused Products;

e.  Marketing and advertising the Accused Products by promoting their thermal isolation features and explaining how they reduce thermal bridging in the same manner as the invention claimed in the '518 Patent;

f.  Featuring completed projects, including the Denver Art Museum Offices and Larimer 1800 projects in Colorado, on Gridworx's website to demonstrate proper installation and use of the Accused Products to prospective customers;

g.  Providing warranties and quality assurance for installations of the Accused Products, thereby encouraging customers to install and use the products;

h.  Supervising, directing, or overseeing installations of the Accused Products on construction projects, including upon information and belief on Colorado projects; and

i.  Continuing to promote, support, and encourage the use of the Accused Products despite actual knowledge since July 29, 2025, that such use infringes the '518 Patent.

69.    Gridworx's customers, contractors, installers, and end users have directly infringed and continue to directly infringe one or more claims of the '518 Patent by installing and using the Accused Products in accordance with Gridworx's instructions, specifications, and guidance.

70.    Gridworx has had actual knowledge of the '518 Patent since at least July 29, 2025,

when KWS provided Gridworx with written notice of the patent and informed Gridworx that the Accused Products infringe the '518 Patent and that Gridworx's activities induce infringement by third parties.

71.    Gridworx has known or been willfully blind to the fact that its actions—including providing installation instructions, technical support, marketing materials, and promotional content—would induce and have induced direct infringement of the '518 Patent by third parties.

72.    Gridworx specifically intends that its customers, contractors, installers, and end users install and use the Accused Products in the manner described in Gridworx's installation instructions and technical specifications, which manner directly infringes one or more claims of the '518 Patent.

73.    Gridworx has taken active, affirmative steps to encourage, facilitate, and cause its customers to install and use the Accused Products in an infringing manner. Gridworx's provision of detailed installation instructions, technical support, training, and promotional materials demonstrates Gridworx's specific intent to induce infringement.

74.    Despite having actual knowledge of the '518 Patent since July 29, 2025, engaging outside patent counsel to evaluate the matter, and receiving multiple notices from KWS regarding induced infringement, Gridworx has continued to provide installation instructions, technical support, marketing materials, and other inducing materials to its customers without modification or cessation.

75.    Gridworx's continued inducement of infringement with actual knowledge of the '518 Patent, after engagement with patent counsel, and after rejecting KWS' licensing proposal demonstrates that Gridworx's inducement has been knowing, willful, and in reckless disregard of KWS' patent rights.

76.    KWS has been and continues to be damaged by Gridworx's induced infringement of the '518 Patent. Gridworx's inducement has caused and continues to cause widespread

infringement by third parties, resulting in lost sales, lost profits, lost market share, price erosion, and damage to KWS' business relationships and goodwill.

77.    Unless enjoined by this Court, Gridworx will continue to induce infringement of the '518 Patent by third parties, causing KWS irreparable harm for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment as follows:

A.  A declaration that Gridworx has directly infringed and continues to directly infringe one or more claims of U.S. Patent No. 9,732,518 under 35 U.S.C. § 271(a);

B.  A declaration that Gridworx has induced and continues to induce infringement of one or more claims of U.S. Patent No. 9,732,518 under 35 U.S.C. § 271(b);

C.  A preliminary and permanent injunction pursuant to 35 U.S.C. § 283 enjoining Gridworx, its officers, directors, agents, servants, employees, attorneys, affiliates, subsidiaries, and all persons acting in concert or participation with Gridworx, from:

    (i)    Further direct infringement of the '518 Patent, including making, using, offering for sale, selling, or importing the Accused Products or any other products that infringe the '518 Patent; and

    (ii)   Further induced infringement of the '518 Patent, including providing installation instructions, technical specifications, technical support, training, marketing materials, or any other materials or assistance that induce, encourage, or facilitate infringement of the '518 Patent by third parties;

D.  An award of damages adequate to compensate KWS for Gridworx's direct infringement and induced infringement of the '518 Patent pursuant to 35 U.S.C. § 284, including without limitation lost profits, a reasonable royalty, and such other compensatory damages as are

proven at trial, together with prejudgment and post-judgment interest from at least July 29, 2025;

E.  Enhanced damages up to three times the amount of actual damages pursuant to 35 U.S.C. § 284 based on Gridworx's willful, deliberate, and reckless direct infringement and induced infringement of the '518 Patent after receiving actual notice on July 29, 2025, engaging outside patent counsel, requesting then rejecting licensing negotiations in bad faith, and continuing to infringe without taking any remedial action;

F.  An award of KWS' reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285 on the ground that this is an exceptional case due to Gridworx's willful direct infringement and induced infringement, bad faith conduct in licensing negotiations, engagement of counsel yet failure to obtain or rely upon a formal opinion, and assertion of objectively baseless non-infringement defenses;

G.  An award of KWS' pre-suit and post-filing costs and expenses incurred in this action; and

H.  Such other and further relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff Knight Wall Systems, Inc. respectfully requests a trial by jury on all issues so triable.

DATED this 14th day of November 2025.

Respectfully submitted,

STUDIOIP

By:  /s/ Jessie L. Pellant

**Jessie L. Pellant**
Colorado Attorney Reg. No. 42096
jpellant@studioiplaw.com

**Timothy M. Sullivan**
Minnesota Attorney Reg. No. 0391528
tsullivan@studioiplaw.com

**Mark Emde**
Colorado Attorney Reg. No. 61755
memde@studioiplaw.com

**Larissa M. Goodman**
Colorado Attorney Reg. No. 55222
lgoodman@studioiplaw.com

3000 Lawrence St.
Denver, CO 80205
303-563-5360

*Attorneys for Plaintiff*
Knight Wall Systems, Inc.